Filed 8/30/23  P. v. Vu CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>BRANDON MATTHEW VU,<br><br>　　Defendant and Appellant. | G061610<br><br>(Super. Ct. No. 19CF1757)<br><br>O P I N I O N |

　　　　　　　　Appeal from a judgment of the Superior Court of Orange County, Andre Manssourian, Judge.  Affirmed.

　　　　　　　　Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　　　　　　Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Heather B. Arambarri, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant contends his convictions for possessing a firearm and ammunition as a felon violate the Second Amendment right to bear arms, as interpreted by the United States Supreme Court in *New York State Rifle & Pistol Association, Inc. v. Bruen* (2022) __ U.S. __ [142 S.Ct. 2111] (*Bruen*). However, *Bruen* and its progeny make clear that right applies only to law-abiding, responsible citizens. Because appellant has rather spectacularly demonstrated he is not such a person, we reject his constitutional challenge and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of June 25, 2019, appellant and Orlando Arballo confronted a man on a sidewalk in Santa Ana. During the encounter, Arballo brandished a gun and took the man's wallet, headphones and phone charger. Then he and appellant left the scene in a black Mercedes Benz that was waiting in the area.

About 20 minutes later, the Mercedes pulled up to three teenagers in a nearby neighborhood. Arballo and appellant exited the vehicle with guns and ordered the teens to turn over their property, which they did. As before, Arballo and appellant got away in the Mercedes, but not for long.

That night, the police spotted the Mercedes on the roadway in Santa Ana. When they tried to pull it over, the vehicle sped off and crashed into a post. At that point, Arballo and a woman fled the vehicle on foot, while appellant remained behind in the backseat. After he was arrested, the police found two firearms and a bag of ammunition in the car, and more ammunition in appellant's shirt pocket. Appellant's DNA was found on one of the firearms, and Arballo's DNA was found on the other.

At trial, the parties stipulated appellant had previously been convicted of a felony. The jury found him guilty of four counts of robbery and one count each of possessing a firearm as a felon and possessing ammunition as a felon. (Pen. Code, §§ 211/212.5, subd. (c), 29800, subd. (a)(1), 30305, subd. (a)(1); all further statutory

2

references are to this code.)  It also found he personally used a firearm during the teen robberies.  (§ 12022.53, subd. (b).)

Appellant admitted suffering a prior strike and a prior serious felony conviction, as well as serving two prior prison terms.  (§§ 667, subds. (b)-(i), 1170.12, 667, subd. (a)(1), 667.5, subd. (b).)  The trial court sentenced him to 23 years in prison, representing 8 years for the robberies, 10 years for the firearm enhancement, and 5 years for the prior serious felony conviction.  Concurrent terms were imposed on the remaining counts.

### DISCUSSION

Appellant contends the gun and ammunition laws he was convicted of violating – sections 29800 and section 30305 – are facially unconstitutional under the Second Amendment.[1]  We disagree.

The Second Amendment provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  (U.S. Const., 2d Amend.)  Because this right is fundamental to our nation's scheme of ordered liberty, it applies to the states through the due process clause of the Fourteenth Amendment.  (*McDonald v. City of Chicago* (2010) 561 U.S. 742 (*McDonald*).)  However, like all other constitutional rights, the Second Amendment right to bear arms is limited; it does not allow people "to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."  (*District of Columbia v. Heller* (2008) 554 U.S. 570, 626 (*Heller*).)

*Heller* illustrates this important point.  There, the high court ruled the Second Amendment generally allows people to have handguns in their home for self-defense.  However, the court framed its ruling in a limiting fashion, saying it protected

---

[1] Section 29800 makes it a crime for any person who has been convicted of a felony to own, purchase, receive, or possess any firearm, and section 30305 bars felons from owning, possessing, or having under their custody or control, any ammunition or reloaded ammunition.

3

"the right of *law-abiding, responsible citizens* to use arms in defense of hearth and home."  (*Heller, supra,* 554 U.S. at p. 635, italics added.)  It also emphasized, "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ."  (*Id*. at p. 626; accord, *McDonald, supra*, 561 U.S. at p. 786 [repeating that caveat].)

In last year's *Bruen* decision, the high court extended *Heller* to include the right to carry a handgun for self-defense outside the home.  In so doing, the court clarified that the judicial standard for assessing gun laws does not involve a means-end analysis of the government's purported justification for the law in question.  (*Bruen, supra*, 142 S.Ct. at p. 2127.)  Although some lower federal courts had interpreted *Heller* as requiring such an analysis, *Bruen* rejected that approach.  Instead, it formulated the following test for applying the Second Amendment:

"When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.  Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'  [Citation.]"  (*Bruen, supra*, 142 S.Ct. at pp. 2129-2130.)

As to the threshold question of whether the Second Amendment covers the conduct in question, *Bruen* again signaled the scope of the amendment was limited to *law-abiding citizens*.  In fact, Justice Thomas made this apparent in the opening paragraph of his majority opinion when he explained, "In [*Heller*] and [*McDonald*] we recognized that the Second and Fourteenth Amendments protect the right of an ordinary, *law-abiding citizen* to possess a handgun in the home for self-defense.  In this case, petitioners and respondents agree that ordinary, *law-abiding citizens* have a similar right to carry handguns publicly for their self-defense.  We too agree[.]"  (*Bruen, supra*, 142 S.Ct. at p. 2122, italics added.)

4

Thereafter, Justice Thomas used the phrase "law-abiding" a dozen more times to describe "the people" whose rights the Second Amendment was intended to protect. (*Bruen, supra*, 142 S.Ct. at pp. 2124-2156.) He also recognized that states commonly use background checks on gun applicants to ensure that only "law-abiding, responsible citizens" are allowed to acquire firearms. (*Id*. at p. 2138, fn. 9.)

The concurring and dissenting Justices agreed with this limitation. (See, e.g., *Bruen, supra*, 142 S.Ct. at p. 2159 (Alito, J., concurring) [the Second Amendment codifies the right of *law-abiding citizens* to protect themselves].) And, like Justice Thomas, they went out of their way to emphasis the laws requiring background checks and prohibiting felons from possessing firearms were not in jeopardy due to anything that was said in *Bruen*, *Heller* or *McDonald*. (*Id*. at p. 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.) and p. 2189 (Breyer, J., dissenting, joined by Sotomayor, J. and Kagan, J.).)

Therefore, it is hardly surprising that in the wake of the *Bruen* decision, courts have widely rejected challenges to such laws. Indeed, "over 100 district courts have held the federal law prohibiting felons from possessing firearms remains valid even after *Bruen*. [Citations.]" (*United States v. Robinson-Davis* (W.D. Va. 2023) 2023 U.S. Dist. LEXIS 42634, p. *6; see also *United States v. Jackson* (8th Cir. 2023) 69 F.4th 495 [holding similarly]; but see *Range v. AG United States* (3rd. Cir. 2023) 69 F.4th 96 [as applied to a defendant who had previously been convicted of making false statements to obtain food stamps, the federal firearms prohibition on felony offenders violated the Second Amendment].)

The exact gun and ammunition laws appellant was convicted of violating have also withstood constitutional challenge post-*Bruen*. Recently, in *People v. Alexander* (2023) 91 Cal.App.5th 469 (*Alexander*), our colleagues in Division Two of the Fourth Appellate District ruled, "*Heller* and *Bruen* both held that the Second Amendment protects the individual right of '"law-abiding, responsible citizens"' to possess firearms.

[Citations.]  Convicted felons, by definition, are not law-abiding.  Felons thus are not among 'the people' who have an individual right to possess firearms under the Second Amendment.  [Citation.]" (*Id*. at p. 479.)  Therefore, sections 29800 and 30305 do not violate the Second Amendment.  (*Ibid*.)

Appellant disagrees.  He points out that in *Heller*, the Supreme Court stated the term "the people" in the Second Amendment "unambiguously refers to all members of the political community, not an unspecified subset." (*Heller, supra*, 554 U.S. at p. 580.)  However, in so doing, the court was drawing a distinction between the broader national community and militia members.  (*Id*. at pp. 580-581.)  The court was not defining the scope of the Second Amendment, which it repeatedly described in both *Heller* and *Bruen* as extending only to law-abiding citizens.  "We cannot ignore the [c]ourt's guidance" on this threshold issue.  (*Alexander, supra*, 91 Cal.App.5th at p. 480; accord, *People v. Odell* (2023) 92 Cal.App.5th 307, 316-317 [because convicted felons are not law-abiding citizens, they fall outside the ambit of the Second Amendment].)

Appellant points out that some federal judges have penned dissents arguing for a broader interpretation of the Second Amendment (see, e.g., *Kanter v. Barr* (7th Cir. 2019) 919 F.3d 437, 453 (Barrett, J., dissenting) [neither felons nor the mentally ill should be categorically excluded from the scope of the Second Amendment]; *Folajtar v. Attorney General of the United States* (3d Cir. 2020) 980 F.3d 897, 912 (Bibas, J., dissenting) [the right to bear arms should extend to nondangerous felons].)  However, dissenting opinions are not the law.  (*People v. Lopez* (2012) 55 Cal.4th 569, 585.)  And these minority viewpoints are inconsistent with *Heller*, which "defined the right protected by the Second Amendment as belonging to 'law-abiding, responsible citizens' [citation], and *Bruen*[, which] reaffirmed that limitation [citation]." (*Alexander, supra*, 91 Cal.App.5th at p. 480.)

Appellant argues it does not make sense for felons to lose their constitutional right to carry guns for self-defense when they retain other constitutional

rights, such as their rights under the First Amendment.  However, "this argument ignores differences between the rights protected by the First and Second Amendments, as the exercise of rights under the First Amendment does not put at risk the physical safety of others."  (*United States v. Price* (N.D. Ill. 2023) __ F.Supp.3d __, __, 2023 U.S. Dist. LEXIS 23794, p. *10.)  That risk justifies greater restrictions on a felon's Second Amendment rights as compared to other constitutional rights.  (*Ibid.*)

For all these reasons, we uphold appellant's convictions for possessing a firearm and ammunition as a felon.  He has failed to convince us the statutes prohibiting such conduct are facially unconstitutional as violative of the Second Amendment.

## DISPOSITION

The judgment is affirmed.

BEDSWORTH, ACTING P. J.

WE CONCUR:

MOTOIKE, J.

DELANEY, J.